# CASES

IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

MIDDLE DISTRICT—HARRISBURG 1861.

## The Pennsylvania Railroad Co. *versus* The Commonwealth.

*Writ of Error from Supreme Court of the United States.—Practice as to Stay of Execution.—Records, Effect of Remission, on Affirmance of Judgment.—Power of Supreme Court to stay Execution, on the Ground of Writ of Error from Supreme Court of the United States.*

1. A defendant is not entitled to a stay of execution, while writs of error to the final judgments in the state court, are pending in the Supreme Court of the United States, where, under the practice of that court, and the Acts of Congress, the writs of error were not delivered in time.

2. Where the records of the cases in the courts below were not sent up with the writs of error, but the causes were tried upon paper-books only, it is not a reason for staying executions issued on the affirmance of the judgments, that the records were not sent back from the Supreme Court, when they had never been filed there by the plaintiff in error, who claimed the stay.

3. Upon the affirmance of the judgment in the Supreme Court, and remission of the records ordered, it was the duty of the court below to proceed, though the remission was constructive and not actual, because the records had not been brought up with the writs of error. The cause, being, as a matter of fact, decided by the Supreme Court, and sent back, the records were constructively remitted by the certificate of the judgment sent to the Common Pleas.

[Pennsylvania Railroad Co. *v.* Commonwealth.]

4. The State Supreme Court cannot exercise an equitable control over executions upon judgments affirmed therein, by staying them on the ground that they were issued after the writs of error from the Supreme Court of the United States were served; for the legal effect of those writs, depending upon Federal law, would be altered if the equity doctrines of the state, not admitted by the United States courts, and not the subject of review there, were allowed to control them.

5. Where less than one-half of the claims against the defendants below were affected by the question to be submitted to the Supreme Court of the United States, they should have done equity by paying that part which was undisputed, before taking writs of error to the Federal courts, or asking any equitable indulgence from the state courts, in behalf of the disputed part.

ON the 7th of January 1861, Thomas A. Scott, vice-president of the Pennsylvania Railroad Company, presented a petition to the Supreme Court in banc at Philadelphia, setting forth,

That two certain causes have depended in court, wherein the Pennsylvania Railroad Company is plaintiff in error, and the Commonwealth of Pennsylvania is defendant in error, both of which were founded upon writs of error addressed to the Court of Common Pleas of Dauphin county; the one writ being No. 29, of April Term 1860, and the other being No. 69, of April Term 1860, in the Middle District of the said Supreme Court.

That said causes having come on to be heard, were, on the 5th day of October, decided by the court by an affirmance of the judgment which had been rendered in each of said causes in the court below.

That in each of said causes the same questions were presented, involving a construction of clauses of the Constitution of the United States, and that the decision which was rendered, affirmed the validity of the law of the state, which the plaintiff in error contended was in contravention of clauses of the Constitution of the United States.

That thereupon they caused writs of error to be issued from the Supreme Court of the United States, addressed to the judges of the Supreme Court of Pennsylvania, requesting that the records of said causes should be transmitted to the Supreme Court of the United States, for review by that tribunal.

That in each of said causes the Pennsylvania Railroad Company gave bail in error for the entire debt and for costs, which bail was justified prior to the issuing of said writs. That the said writs were issued on the 26th day of October 1860, and were lodged in the office of the prothonotary of the Supreme Court of the Middle District, on the 27th day of October, and were delivered in duplicate to the judges of the Supreme Court on the 29th of the same month.

That the records of said causes were never in fact transmitted from the Supreme Court to the Court of Common Pleas of Dauphin county after the affirmance of the judgment, and that notwithstanding this fact, and notwithstanding the lodging of the

writs of error in the office of the Supreme Court, writs of execution have been issued out of the Common Pleas of Dauphin county upon both of said judgments, under which levies have been made, and your petitioners have been threatened with a sale of the property levied upon.

That thereupon they caused writs of error to be issued to the Court of Common Pleas of Dauphin county from the Middle District of the Supreme Court, being Nos. 33 and 34, of April Term 1861, said writs of error being to the executions aforesaid, which had been issued, and gave bail in error, which was justified before the issuing of said writs. That said writs of execution were issued on the 8th day of November, and said writs of error were issued and brought into the office of the prothonotary of the Court of Common Pleas of Dauphin county on the 16th day of November instant. That notwithstanding the facts before stated, the Commonwealth insists on her said writs of execution, and the petitioners are thus left wholly without adequate remedy, unless this court interposes and arrests further proceedings. That said executions are wholly without adequate foundation in law, because the records having been removed from the Court of Common Pleas of Dauphin county to this court and never in fact remitted, no record exists in said inferior court upon which an execution can be founded. And further they submitted and insisted that the writs of error from the Supreme Court of the United States having attached to the record in this court prior to the issuing of any executions thereafter, could not be lawfully issued at all, or if at all, certainly not without the express order of this court. That said writs of error from the Supreme Court of the United States having been lodged within three weeks of the period of entering judgment of affirmance in this court, and bail in error having been justified, the same operated as a *supersedeas*, under the Act of Assembly for such cases made and provided. They further submitted, that by the law and usages of the Commonwealth, a writ of error issued with bail in error justified, and the writ of error brought into the office of the prothonotary before the actual issuing of an execution, always operates as a *supersedeas;* and therefore prayed the court, after due inquiry had into the facts herein set forth, to order and direct the issuing of writs of *supersedeas* of the said two writs of execution issued out of the Court of Common Pleas of Dauphin county, which writs and execution are numbered 81 and 82 of the November Term 1860, of the said court, and that pending these proceedings the sheriff of Dauphin county may be admonished and directed to forbear from further proceedings under said writs.

The case was argued by *Theodore Cuyler* and *William M.*

*Meredith,* for the petitioners; and by *St. George Tucker Campbell* and *John C. Knox,* for the Commonwealth.

The opinion of the court was delivered by

LOWRIE, C. J.—These two cases belong to the Middle District, and at the request of the parties we hear them here. They are writs of error to the executions issued in two cases in the Court of Common Pleas of Dauphin county, which had already been before us, and which we had decided while sitting at Harrisburg by affirming the judgment.

The plaintiff's motion is to stay the executions on the ground that writs of error had issued to remove the causes to the Supreme Court of the United States for the review of our judgment. The defendant's motion is to quash our writs of error to the execution, on the ground that their purpose is to procure a stay of execution, though the writs of error to the Supreme Court of the United States were not issued in time to secure this purpose.

In fact, the writs of error to the Supreme Court of the United States, our writs of error to the executions, and the motion to quash our writs each and all raise but one question for our consideration. Is the company entitled to a stay of execution pending the writs of error in the Supreme Court of the United States? Answering this question according to strict law, under the Acts of Congress, we think not, because these writs were not delivered in time.

If we have misunderstood the practice of that court in this, we doubt not that an application to them will secure a correction of our mistake, by the order of a *supersedeas,* which will be cheerfully obeyed if granted.

But it is urged that we ought to stay the executions, because the records had not been actually sent back from this court to the Common Pleas, and this exposes a very slovenly practice in the case. It appears, in fact, that the records were never sent up and delivered to this court, except one of them nominally, long after our judgments of affirmance and orders of *remittiturs,* and that the parties tried the causes here on their paper-books, and treated them as fully and actually here, though we had not the records. They were not even constructively here; but the parties here so acted in the matter, that none of them would be allowed for the purpose of affecting our action in relation to the causes, to say that the records were not here.

Yet we *must* look at the actual fact when we come to recommit the causes to the Common Pleas, because we cannot actually send back the records that have never been actually sent up to us.

Our affirmance of the judgments involves an order to remit the records, for that is the law and the practice, and sometimes we expressly order the remission as we did in these cases. But

it could only be a constructive remission, for an actual one could not be had. It was therefore a remission of the *causes* to the Common Pleas, with certificates of the judgments here, and this authorized that court to proceed. The *records* never having been actually here, were constructively remitted or released from our jurisdiction by the certificates of our judgment sent to that court. If the plaintiffs in error had objected that the records were not here, their writs of error would have been *non prossed* in July last, and executions would have been then issued, that would have been subject to no stay. But what matters all this, since there could have been no stay, even if the records had still been in this court at the time of the delivery of the United States writs of error? We could hardly allow the plaintiff's irregularities in not filing the records to furnish them a cause of error in relation to the executions. We would not let the plaintiffs below suffer for such matters. They are entitled to their executions. The *cause* was here, and decided and sent back as a matter of fact, even though the regular forms of such proceedings were not well observed. Being in fact, though informally sent back, it was the duty of the Common Pleas to proceed.

But we are asked to exercise an equitable control over the executions, by treating them more in analogy to our state practice, and staying them because they were issued after the Federal writs of error were served, though it is not denied that the legal effect of the writs of error depends upon Federal law. Yet we should really alter the effect of these writs if we should infuse into them our state notions of equity, not admitted by the Federal courts, and not subject to review by them. We should thus change the Federal law by annexing it to a foreign and incompatible element of equity, to the injury of one of the parties. And thus, too, we should perhaps change the responsibility of the bail, or else we should allow the writs to stay the executions without bail; for the bail are bound only for a legal stay of execution. We cannot exercise such an equity power.

If the plaintiffs in error had feared that they might suffer from the well known practice of the court, of entering judgments in reserved cases at our next place of sitting, we should have taken care to prevent this, had we been requested. If they have actually suffered by it, they ought to have shown it to us in some way. We cannot presume that they did not know the public acts of the court, done in due course of law, in their cases.

And if the plaintiffs in error ask equity, they ought to do equity. It is admitted that less than half of the claims is affected by the question that is to be submitted to the Supreme Court of the United States. Then they ought to have paid that which is no longer disputable before they took their writs of error. It is urged, moreover, that if the judgments be now collected by

[Pennsylvania Railroad Co. *v.* Commonwealth.]

executions, the company will have no remedy to recover the amount back from the state on a reversal of the judgments. But, on the other hand, it is said that they are indebted to the state several hundred thousand dollars for taxes, besides these judgments, and exclusive of all that they are now disputing on constitutional grounds. We ought to be informed of the relations of the parties in the matter, that we may see if the company has any claim to equitable indulgence. They ought to show that they have been doing equity by paying their undisputed taxes, before asking any equitable indulgence in behalf of the disputed part. Besides, we cannot presume that the state will refuse to refund, if it shall be decided that any part is wrongfully collected.

We do not find anything to support these writs or to authorize a stay of execution issued by the Common Pleas.

WOODWARD, J.—I was strongly inclined to think on the argument that if the Supreme Court of the United States have jurisdiction of these cases, their writs of error would supersede or stay the executions, although the writs were not filed in the clerk's office within ten days after the filing of the opinion of this court. I am doubtful about the date of our judgment. It could not be the date of the reading the opinion at Sunbury, for the record was not there, nor of the date of the filing of the opinion by our clerk at Harrisburg, for neither the record nor the court were there. Under these circumstances I was inclined to think that our judgment ought to be considered as entered within ten days before the writs of error were filed, and consequently that the writs of error would operate as a *supersedeas*. But I hold that the question of jurisdiction and the effect of these writs of error are questions for the Supreme Court of the United States. And as no one of my brethren take my view of the effect of these writs, I have only to acquiesce in the opinion of the Chief Justice, and leave the court who issued the writs of error to enforce their legal effect.

STRONG, J.—I concur with the Chief Justice and Brother THOMPSON as to the effect of the writs of error from the Supreme Court of the United States, and I think it is for that court to enforce their own writs. But I doubt whether the records can be considered as having been in the Common Pleas of Dauphin county, when the executions were issued, and therefore I would not grant the writs of error as to them.

Writs of error quashed, and the sheriff directed to adjourn the sale for one week, so as to give the plaintiffs in error time to apply to the Supreme Court of the United States for a *supersedeas*.